**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY L. NOYES, | ) | |
| | ) | Case No.: |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

## I.  INTRODUCTION

1. Plaintiff Jeffrey L. Noyes (the "Plaintiff") brings this action against Federal National Mortgage Assistance (the "Defendant") for claims pursuant to Missouri state law for actions of the Defendant that resulted in economic losses and emotional distress.  Continuously since August 18, 2006, the Plaintiff has been licensed by the State of Missouri's Department of Professional Registration (the "MDPR") as a residential real estate appraiser.  The MDPR is the entity in Missouri that is authorized and responsible for determining the competency and eligibility of an individual to perform real estate appraisals in Missouri.  The MDPR is the entity in Missouri that is authorized and responsible to determine if an appraiser had performed an appraisal in a deficient manner.  The Plaintiff in or about 2006 became eligible to perform real estate appraisals for lenders seeking sale to or guarantee from Fannie Mae without review and continued in that status until on or about July 31, 2015.

2. Beginning on or about July 31, 2015, the Defendant communicated to mortgage lenders that the Defendant had placed the Plaintiff on the Defendant's 100% Review List (the

1

"List") despite the Plaintiff not having engaged in any conduct that would justify the Plaintiff's inclusion in the List. The List comprises a small number of appraisers whom the Defendant had deemed had performed deficient appraisals. The Defendant continued to make regular communications to mortgage lenders that the Plaintiff remained on the List for in excess of one year. The Defendant made no communication to the MDPR alleging that the Plaintiff had engaged in any deficiencies with regard to mortgage appraisals conducted by the Plaintiff. The MDPR maintains personnel qualified to determine whether any allegations that an appraiser has failed to perform appraisals adequately are meritorious. The MDPR affords a licensed appraiser the opportunity to appeal any disciplinary decision of the MDPR.

3. Shortly after being placed on the List, the Plaintiff became aware that the number of appraisals that mortgage lenders contracted with him to perform greatly diminished. The Plaintiff's business revenues decreased tremendously and remained greatly diminished at least throughout the period that the Defendant communicated to mortgage lenders that the Plaintiff was on the List. Upon information and relief, mortgage lender's contracting with the Plaintiff to perform appraisals, still remains impaired as a result of the conduct of the Defendant.

4. The Plaintiff timely engaged in any actions available to the Plaintiff to avoid being placed on the List. The Plaintiff timely engaged in any actions available to the Plaintiff to cause the Defendant to remove the Plaintiff from the List. The Defendant persisted for well over one (1) year to communicate to mortgage lenders that the Plaintiff remained on the List.

5. The Defendant's actions in placing the Plaintiff on the List were arbitrary, capricious, negligent, reckless, and manifested such reckless indifference to the right of the Plaintiff to engage in the business of residential real estate appraisal such that the law implies that the Defendant intentionally inflicted the Plaintiff's injuries. The Defendant was consciously

negligent in that the Defendant was conscious of its conduct in communicating to mortgage lenders that the Plaintiff was on the List and was conscious that its conduct would naturally or probably result in the Plaintiff's injuries.  The Defendant had reason to know that its communications regarding the Plaintiff had a high degree of probability of causing the Plaintiff's damages of substantial economic losses and severe emotional distress.

6.     The Defendant's decision to place Plaintiff on the List was made by an employee lacking sufficient knowledge and skill to make an accurate determination as to whether or not Plaintiff's appraisal(s) had been performed deficiently and therefore warranted 100% review.

7.     The Plaintiff's being on the List created an expectancy on the part of mortgage lenders that selecting the Plaintiff to perform a real estate appraisal for a mortgage loan would create a delay in the mortgage loan being granted and a consequent delay in receipt of the associated revenues.  Mortgage lenders seeks to generate revenues as quickly as possible in part because the lender's short-term profit is an important influencer of the lender's stock price.  The Plaintiff's being on the List created an expectancy on the part of mortgage lenders that the use of the Plaintiff to perform an appraisal for a mortgage loan would create a risk that the Defendant might not purchase or guarantee a mortgage loan for which the Plaintiff performed the appraisal.

8.     The Plaintiff suffered severe, pervasive emotional distress including chronic anxiety as a proximate result of the Defendant's actions.

9.     Plaintiff seeks an award of damages in excess $75,000.00, exclusive of interests and costs.  The Plaintiff demands a jury trial on all claims and issues.

**II.     THE PARTIES**

**PLAINTIFF**

10.    Plaintiff Jeffrey L Noyes is a citizen of the State of Missouri and was so at all times

3

relevant herein.

11. Plaintiff is a resident of the County of Saint Louis, Missouri and was so at all times relevant herein.

12. Plaintiff resides at 1610 Baronet Drive, Ballwin, Missouri 63021

13. Plaintiff has engaged in the business of real estate appraising since August 2006.

## DEFENDANT

14. Defendant Federal National Mortgage Association is commonly referred to and is referred to sometimes herein as "Fannie Mae."

15. Defendant is a congressionally chartered corporation.

16. The address of the Defendant is Midtown Center, 1100 15th Street, NW, Washington, DC 20005.

17. Hugh R. Frater is the Chief Executive Officer of the Defendant.

18. Defendant conducts business in the State of Missouri and in the County of Saint Louis, Missouri and did so at all times relevant herein.

19. Defendant is a purchaser of mortgage loans from mortgage lenders.

20. Defendant is a guarantor of mortgage loans.

21. Defendant's estimated revenues in 2019 totaled nearly a quarter of a trillion dollars. The Defendant exercises tremendous influence over mortgage lenders in its role as a purchaser and guarantor of a vast number of mortgages.

### III. JURISDICTION AND VENUE

22. This Court has jurisdiction over this matter pursuant to 28 U. S. Code § 1332 due to the diversity of the parties and that the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.00.

23. Venue is proper pursuant to 28 U. S. C. § 1391 because at all times relevant, the Plaintiff resided in and conducted his real estate appraisal business in this district, and the Defendant's wrongful acts and/or omissions complained of herein occurred in this judicial district.

## COUNT I

### (TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY)

24. Plaintiff realleges and incorporates all of the preceding paragraphs as if fully set forth herein.

25. Prior to July 31, 2015, Plaintiff had engaged in the performance of mortgage appraisals for numerous mortgage lenders and had enjoyed a profitable business from doing so including performing appraisals for mortgage lenders who were seeking to sell mortgages to Fannie Mae. The Plaintiff had an expectancy of continuing to be paid by mortgage lenders to conduct real estate appraisals at or about the same level of frequency as prior to July 31, 2015. The Plaintiff had an expectancy of continuing to receive revenues from performing real estate appraisals per annum at or in excess of the revenues generated shortly prior to July 31, 2015.

26. The facts stated above in the paragraph above show that the Plaintiff had a valid business expectancy.

27. The Defendant prior to July 31, 2015 and on or after July 31, 2015 and at all times relevant herein was knowledgeable that the Plaintiff conducted real estate appraisals as the Plaintiff's business activity. Defendant knew that the Plaintiff had an expectancy of being selected to perform paid appraisals at about the same level of frequency as prior to July 31, 2015.

28. The facts stated above in the paragraph above show that the Defendant was knowledgeable that the Plaintiff had knowledge of the Plaintiff's business expectancy.

29. Defendant's publishing of the List that stated that any mortgage appraisals performed by the Plaintiff would be subject to 100% review was intentional interference by the Defendant that induced and caused a breach of the Plaintiff's valid business expectancy.

30. The Defendant's decision to place the Plaintiff on the List was made by an employee lacking the qualifications to determine if the Plaintiff's appraisals had been conducted in any deficient manner. The Defendant improperly delegated authority to an unqualified employee to determine whether the Plaintiff should be placed on the list. The Defendant owed a duty to the Plaintiff to not place the Plaintiff on the List absent a competent review of the Plaintiff's prior appraisals showing a deficiency in performance of real estate appraisal(s).

31. The facts stated in the paragraph above show that the Defendant had an absence of justification in placing the Plaintiff on the List and communicating that information to mortgage lenders.

32. After the Defendant placed the Plaintiff on the List, mortgage lenders began contracting with the Plaintiff for far fewer real estate appraisals than before the Defendant placed the Plaintiff on the List. The Plaintiff consequently sustained a substantial loss in income. The Plaintiff sustained severe, chronic emotional distress due to the Defendant's actions and as a proximate cause of the Defendant's actions.

33. The facts stated above in the paragraph above show that the Defendant caused the Plaintiff to sustain damages as a result of the Defendant's tortious interference with the Plaintiff's business expectancy.

34. The statute of limitations for a tortious interference with a business expectancy claim is five years under Missouri law. *D'Arcy & Associates, Inc. v. K.P.M.G. Peat Marwick, L.L.P.*, 129 S.W.3d 25, 29 (Mo. Ct. App. 2004).

WHEREFORE, Plaintiff states that he has been damaged, for which damages he prays that this Honorable Court enter a judgment against the Defendant in such a sum that may be fair and reasonable under the premises and in excess of $75,00.00, exclusive of interests and costs, together with costs expended herein, including special damages, general damages, and punitive damages, and for such further relief as the Court may deem just and proper in the premises.

## COUNT II

### (NEGLIGENT SUPERVISION)

35. Plaintiff realleges and incorporates all of the preceding paragraphs as if fully set forth herein.

36. The Defendant possessed a legal duty to exercise ordinary care to protect the Plaintiff against an unreasonable risk of harm.

37. The Defendant's communicating to mortgage lenders that the Defendant had placed the Plaintiff on the List was a breach of the Defendant's duty to exercise ordinary care to protect the Plaintiff against an unreasonable risk of harm including harm to his business revenues.

38. The Defendant's communicating to mortgage lenders that the Defendant had placed the Plaintiff on the List proximately caused the Plaintiff's economic losses and emotional distress. The Defendant was negligent in failing to adequately supervise its employee(s) who made the decision to place and keep the Plaintiff on the List.

39. The Defendant's communicating to mortgage lenders that the Defendant had placed the Plaintiff on the List proximately caused actual damages to the Plaintiff's person and property.

40. To establish a claim for negligent supervision, the Plaintiff must plead:  1)  that a legal duty of the Defendant to use ordinary care to protect the Plaintiff against unreasonable risk of harm existed, 2)  that Defendant breached its duty, 3)  that Defendant's breach was a proximate

cause between the breach and the resulting injury, and 4) that Plaintiff sustained actual damages to his person or property. *Hoover's Diary, Inc. v. Mid-Am. Dairymen, Inc.*, 700 S.W.2d, 426, 431 (Mo. banc 1985).

41. The Plaintiff herein has pleaded sufficient facts to assert a claim for negligent supervision.

WHEREFORE, Plaintiff states that he has been damaged, for which damages he prays that this Honorable Court enter a judgment against the Defendant in such a sum that may be fair and reasonable under the premises and in excess of $75,00.00, exclusive of interests and costs, together with costs expended herein, including special damages, general damages, and punitive damages, and for such further relief as the Court may deem just and proper in the premises.

## COUNT III

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

42. Plaintiff realleges and incorporates all of the preceding paragraphs as if fully set forth herein.

43. The Defendant had a legal duty to protect the Plaintiff from injury resulting from its communications to mortgage lenders that the Defendant had placed the Plaintiff on the List.

44. The Defendant breached its duty to protect the Plaintiff from injury resulting from its communications to mortgage lenders that it had placed the Plaintiff on the List.

45. The Defendant proximately caused the injury to the Plaintiff by its communication that the Plaintiff was on the List.

46. The Defendant did cause injury to the Plaintiff.

47. The Defendant should have realized that its conduct involved an unreasonable risk of causing distress.

48. As a result of the Defendant's above-describe conduct, the Plaintiff has for more than six months daily suffered the following: excessive anxiety and worry about a number of events or activities including his work and business activities; and difficulty controlling the worry, restlessness, being easily fatigued, difficulty concentrating, irritability, muscle tension, sleep disturbance, each of which was related to the anxiety and worry. The Defendant's anxiety and worry that resulted from the Defendant's actions were and are not related to another condition. The Plaintiff's anxiety and worry resulting from the Defendant's conduct caused clinically significant distress and impairment in social, occupational, and other important areas of functioning. The Plaintiff's anxiety and worry were not the results of the effects of a substance, nor a general medical condition, and did not occur as the result of or during a condition other than the emotional distress caused by the Defendant.

49. The Plaintiff's emotional distress caused by the Defendant is medically diagnosable as an anxiety disorder pursuant to the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition ("DSM-5") published by the American Psychiatric Association.

WHEREFORE, Plaintiff states that he has been damaged, for which damages he prays that this Honorable Court enter a judgment against the Defendant in such a sum that may be fair and reasonable under the premises and in excess of $75,00.00, exclusive of interests and costs, together with costs expended herein, including special damages, general damages, and punitive damages, and for such further relief as the Court may deem just and proper in the premises.

## COUNT IV
### (DEFAMATION)

50. Plaintiff realleges and incorporates all of the preceding paragraphs as if fully set forth herein.

9

51. The elements of a defamation in Missouri are: 1) publication, 2) of a defamatory statement, 3) that identifies the Plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the Plaintiff's reputation. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303 (Mo. ban 1993).

52. The Defendant's written communication to mortgage lenders that Plaintiff was on the List was a publication that satisfied the first element of a defamation claim.

53. The Defendant's publication of the Plaintiff's name on the list damaged the Plaintiff's reputation within the mortgage lending industry in that the publication caused mortgage lenders to believe that the Plaintiff was deficient with regard to the performance of real estate appraisals.

54. The List explicitly identified the Plaintiff as being on the List.

55. The Defendant's publication of the List with the Plaintiff's name thereon was with the required degree of fault.

56. The Defendant's publication of the List with the Plaintiff's name thereon damaged the Plaintiff's reputation within the mortgage industry and among mortgage lenders, the source of the Plaintiff's business.

57. The Plaintiff has herein sufficiently pleaded the elements of defamation under Missouri law.

58. The Plaintiff filed an action for defamation against the Defendant on July 30, 2017 in the Circuit Court of Saint Louis County, Missouri.

59. The Defendant's communications to mortgage lenders that the Plaintiff was on the List were in no way privileged communication(s) in light of the List's clear communication to

mortgage lenders that the Plaintiff was less desirable to mortgage lenders than other appraisers and that the Plaintiff was deficient as a real estate appraiser.

60. The Defendant acted with actual malice in that the Defendant either had knowledge of the falsity that the Plaintiff was not deficient as a real estate appraiser or the Defendant acted with reckless disregard as to whether or not Plaintiff was deficient as a real estate appraiser.

61. The Defendant's communications proximately caused the Plaintiff to suffer the deprivation of great gains and profits that he would have made absent the Defendant's defamatory communications.

62. The Defendant's conduct in publishing to mortgage lenders that the Plaintiff was deficient as a real estate appraiser was willful, wanton, and malicious.

63. The Defendant's relevant communications described above went beyond communications of mere opinions.

64. The Defendant's relevant communications described above were beyond the protections of the First Amended to the United States Constitution.

65. The Defendant's relevant communications described above were beyond the protections of the Article I, Section 8 of the Missouri State Constitution.

66. The Defendant's conduct against the Plaintiff was defamation under Missouri state law.

WHEREFORE, Plaintiff prays that this honorable Court enter an order against Defendant awarding special damages, general damages, and punitive damages in an aggregate amount of more than $75,000.00, exclusive of interest and costs, and for specific amounts to be determined, and for court costs expended herein.

        Respectfully submitted,
        LEDBETTER LAW FIRM, LLC

By: <u>/s/ Frank R. Ledbetter</u>
   Frank R. Ledbetter, MBE#53521; Fed#53521MO
   Attorney for Plaintiff
   141 N. Meramec Avenue, Suite 24
   Saint Louis, MO 63105
   (314) 535-7780 Telephone
   (314) 533-7078 Facsimile
   stlatty@gmail.com

STATE OF MISSOURI

COUNTY OF SAINT LOUIS

## VERIFICATION

JEFFREY L. NOYES, being duly sworn, deposes and says: That he is the Plaintiff in the above-entitled action; that he has read the foregoing Petition and knows the contents thereof: and that the same is true to his own knowledge, except as to those matters and things therein alleged upon information and belief, and that as to any such matters and things as are therein so alleged upon information and belief, he believes them to be true,

This is the 30th day of July 2020.

Sworn to and subscribed before me, this the 30th day of July 2020.

```
JAMES JOSHUA NESBITT
Notary Public, Notary Seal
State of Missouri
St. Louis County
Commission # 17970992
My Commission Expires 11-12-2021
```